AO 106 (Rev. 04/010) Application for Search Warrant    AUTHORIZED AND APPROVED/DATE:  /S Bow Bottomly 07/30/2025

*amb*
*7/30/25*

# UNITED STATES DISTRICT COURT
### for the

WESTERN _____ DISTRICT OF _____ OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACOUNT howdoihackyou@gmail.com THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | ) ) ) Case No: M-25- 452-ALM ) ) |

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following Property *(identify the person or describe property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

Located in the Northern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference

The basis for the search under Fed. R. Crim.P.41(c) is *(check one or more)*:

☒ evidence of the crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | possession of child pornography |
| 18 U.S.C. § 2252A(a)(2)(A) | distribution of child pornography |

The application is based on these facts:

See attached Affidavit of Special Agent Marisol Flores, Federal Bureau of Investigation (FBI), which is incorporated by reference herein.

☒ Continued on the attached sheet(s).
☐ Delayed notice of [No. of Days]  days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

_____
*Applicant's signature*

MARISOL FLORES
SPECIAL AGENT
FBI

Sworn to before me and signed in my presence.

Date: _____7/30/25_____

_Judge's signature_

City and State:  Oklahoma City, Oklahoma

AMANDA L. MAXFIELD, U.S. Magistrate Judge
_Printed name and title_

2

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Marisol Flores a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), being duly sworn, depose and state as follows:

### INTRODUCTION

1.     I have been employed as a SA with the FBI since May 2015, and I am currently assigned to the Oklahoma City Division.  I am currently assigned to investigate violations of federal law involving the exploitation of children.  I have gained expertise in conducting such investigations through everyday work in my current role as an SA with the FBI.

2.     As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3.     I make this Affidavit in support of an application for a search warrant for information associated with a certain account, **howdoihackyou@gmail.com** (herein after referred to as the **"SUBJECT ACCOUNT"**) that is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This Affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will

1

review that information to locate the items described in Section II of Attachment B, which constitute instrumentalities, fruits, and evidence of violations of 18 U.S.C. § 2252A.

4.     This investigation, described more fully below, has revealed that an individual knowingly utilized the Kik application, which was associated with email address howdoihackyou@gmail.com, to possess and receive child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(a)(2)(A), and that there is probable cause to believe that evidence, fruits, and instrumentalities of such violations are located on the **SUBJECT ACCOUNT**.

5.     Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the foregoing violations are presently located at the **SUBJECT ACCOUNT**.

## DEFINITIONS

6.     The following definitions apply to this Affidavit and Attachment B:

a. "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text based online communications such as Internet fora and email.

b. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

c. "Child Sexual Abuse Material" includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

d. "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *See* 18 U.S.C. § 1030(e)(1).

e. "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to

3

restrict access to computer hardware (including, but not limited to, physical keys and locks).

f. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alphanumeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

g. "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

h. "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

i. "Minor" means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

j. "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, *see* 18 U.S.C. § 2256(8)(A), or that have been created, adapted, or modified to

4

appear to depict an identifiable minor, *see* 18 U.S.C. §2256 (8)(C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. *See* 18 U.S.C. § 2256(2)(A).

k. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

l. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); mechanical form (including, but not limited to, phonograph records, printing, typing); or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks ("DVD"s), Multi Media Cards ("MMC"s), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

m. A "storage medium" or "storage device" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

n. A "website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as HyperText Mark-up Language ("HTML") and is transmitted from web servers to various web clients via Hyper-Text transport Protocol ("HTTP").

## BACKGROUND OF THE INVESTIGATION

7.     The following paragraphs describe an investigation which Oklahoma City Homeland Security Investigations (HSI) initially began in March 2025. Due to HSI resources being directed towards other investigations at this time, Oklahoma City Federal Bureau of Investigations (FBI) was requested to assist with and continue the investigation in July 2025. Upon beginning the investigation, Oklahoma City FBI determined the subject, Soto, had been in a relationship with an FBI employee of the Oklahoma City that had ended negatively. The employee has not and will not be involved in this investigation.

8.     Media Lab/Kik[1] Electronic Service Provider submitted a CyberTip to the National Center for Missing and Exploited Children (NCMEC) regarding Kik username, "joebidennnn69" distributing videos of Child Sexual Abuse Material (CSAM) on March 31, 2024, on the Kik application. Law enforcement determined the individual utilizing Kik

---

[1] Kik Messenger, commonly called Kik, is a freeware instant messaging mobile app from the Canadian company Kik Interactive, available on iOS and Android operating systems. The application uses a smartphone's internet connection to transmit and receive messages, photos, videos, sketches, mobile web pages, and other content after users register a username. Kik is known for its features preserving users' anonymity, such as allowing users to register without the need to provide a telephone number or valid email address. However, the application does not employ end-to-end encryption, and the company also logs user IP addresses, which could be used to determine the user's ISP and approximate location.

username, "joebidennnn69" resided in South Carolina and was a state representative at the time. Subsequently, law enforcement obtained additional search warrants in their investigation to include a search warrant for the contents of the Kik account associated with Kik username, "joebidennnn69". During the review of said warrant return, investigators observed Kik username, "joebidennnnn69" sharing child pornography with Kik username, "randomcouplehere" on April 3, 2024. During the conversation, "joebidennnn69" asked "randomcouplehere", "Got more bad moms?", to which "randomcouplehere" replied, "Yes trade". The Kik users began sharing media files and continued to send messages to one another. Some additional messages include "randomcouplehere" saying, "I want more like the first one", and "joebidennnn69" responding, "Ok here's more [...] With the boy and girl? [...]". And "randomcouplehere" answering, "Girl sucking a boy". Kik username "joebidennnn69" sent over 50 files of child pornography to Kik username "randomcouplehere" during their April 3, 2024, conversation. [2] Four of those child pornography files are described below:

One video file, named: 0eefb7d0-bd6b-4303-a037-f4cf5e5dcd48.mp4, is a 23 second duration video depicting a prepubescent light-haired female child wearing a shirt sitting in a chair. The child looks at the camera and a nude, adult male walks into the camera frame. The adult male has an erect penis and pushes his penis toward the child's face. The child begins using her hands to masturbate the adult male. The child stops and

---

[2] Law enforcement indicted the user of "joebidennnn69" in June of 2025, for distributing child sexual abuse material.

appears to either cough or gag. The adult male then begins masturbating with the tip of his penis in the child's mouth.

Another video with a file name of: 1a8a0003-486d-4f61-b843-19121e076f37.mp4, is a 21 second duration video depicting a prepubescent or pubescent, dark-haired female child wearing a tank top and shorts. An erect adult penis is in the camera angle at the beginning of the video. The child then begins performing oral sex on the adult male. The child rolls off the adult male and covers her face with her hands before the video ends.

Another video with a file name: 1cce6f2f-dd3d-4333-bb9c-11f87855604c.mp4, is a 1 minute, 36 second duration video depicting a prepubescent female child, nude, lying on her back. The video depicts an adult male inserting his erect penis in the child's anus. The adult male ejaculates on the child's genital area, including her anus, and then begins using his fingers to rub the ejaculate around the child's vaginal and anal areas. The adult male uses his fingers to open the child's genital areas toward the camera. The adult male then touches the child's genital areas with his penis before moving the camera away from the child and the video ends.

Another video with a file name: 1d1b4a97-769a-4024-a25c-1417c3d4535c.mp4, is a 1 minute 10 second duration video depicting a prepubescent female child, with dark hair. The child performs oral sex on an adult male. They are standing in a bathroom, and the adult male directs the child on what to do while performing oral sex. The video ends while the child is still performing oral sex.

9.    On October 29, 2024, Kik, through its parent company MediaLab.ai, provided information regarding username "randomcouplehere" pursuant to an

administrative subpoena served on October 11, 2024. The following is a portion of the information provided by Kik:

Date: October 29, 2024

First Name: Random

Last Name: Couple

Email: howdoihackyou@gmail.com

Username: randomcouplehere

Registration_Timestamp: 2022/05/08 00:04:46

Login IP: 76.194.64.107 2024/10/22 21:30:18 UTC

Kik also provided bind records[3], specifically, IP logs, which username "randomcouplehere" utilized from March 22, 2024, to April 24, 2024. One of the IPs captured by Kik numerous times on April 3, 2024, and during the time period "randomcouplehere" received child pornography files from "joebidennnn69", was: 76.194.64.107. An additional IP address utilized by "randomcouplehere" on March 24, 2024, was IP address: 70.182.81.160.

10.     On January 30, 2025, an administrative subpoena was served to AT&T Corp. to provide information pertaining to IP address: 76.194.64.107. On February 3, 2025, AT&T Corp. responded with the following information:

U-Verse

Billing Party

---

[3] Kik bind records refer to internal data entries used by Kik Messenger to link or "bind" a Kik account to a specific user identity.

Account Number: 317199640

Account Name: Christian Soto

Billing Address: 3225 SW 93rd St., Oklahoma City, OK 73159-6530

Account Creation: 2021-11-09

Account Status: Open

Service Information

Name: Christian Soto

Service Address: 3225 SW 93rd St., Oklahoma City, OK 73159-0000

Contact Phone: (111) 111-0003

Contact Email: CHRISTIAN.I.SOTO.RN@GMAIL.COM

IP Usage

IP Address: 76.194.64.107

Start Date: 01/11/2024  3:46  PM UTC

End Date: 03/22/2024 07:49 PM UTC

11.    On or about January 30, 2025, an administrative subpoena was served to Cox Communications to provide information pertaining to IP address: 70.182.81.160.  On or about March 24, 2025, Cox Communications responded with the following subscriber information:

Name: CMDL/INTEGRIS Community Hospital

Address: 300 S Rockwell Ave Oklahoma City, OK 73128-2222

Telephone number: 855-270-5465

Email address/es:  tammy.harbet@commandlink.com

10

Account Start Date: 08/17/2022

Disconnect Date: N/A

12. On February 20, 2025, an administrative subpoena was served to Google to provide subscriber information pertaining to email address howdoihackyou@gmail.com, the **SUBJECT ACCOUNT**. Google responded with the following information:

Google Account ID: 720692857371

Name: Okaycool Whatsthis

Given Name: Okaycool

Family Name: Whatsthis

e-Mail: howdoihackyou@gmail.com

Alternate e-Mails:

Created on: 2017-10-16 05:02:18 Z

Terms of Service IP: 2607:fb90:944f:e26e:b0f4:d68a:8bb1:e36b

Services: Web & App Activity, Gmail, Google Calendar, YouTube

Deletion IP:

End of Service Date:

Last Updated Date: 2024-08-14 15:06:44 Z

Last Logins: 2024-08-14 15:06:44 Z, 2024-07-11 01:43:52 Z, 2024-05-13 16:56:31 Z

**ACCOUNT RECOVERY**

Recovery e-Mail:

Recovery SMS:

**PHONE NUMBERS**

2-Step Verification Phone Numbers:

**IP ACTIVITY**

| Timestamp | IP Address | Activity Type |
|-----------|-----------|---------------|
| 2024-08-14 15:06:45 Z | 70.168.228.252 | Login |
| 2024-07-11 01:43:52 Z | 2607:fb91:9ee:17e2:a91a:6ff2:313c:1fc2 | Login |

13.     Soto's Oklahoma driver's license lists an address of 3225 SW 93rd St., Oklahoma City, Oklahoma 73159. Current water utilities for 3225 SW 93rd St, Oklahoma City, Oklahoma, are under the name Samantha Soto[4], with an email address of Christian.Soto.rn@gmail.com[5]. Cleveland County Assessor shows the current owner of 3225 SW 93rd St., Oklahoma City, Oklahoma, as Christian Soto.

14.     In March of 2025, Oklahoma City Police Department responded to a call[6] at

---

[4] Samantha Soto has been identified as a former spouse of Soto's. Samantha Soto and Christian Soto were married in 2013 and divorced in 2021.
[5] This is the same email address listed on the AT&T Internet Service return for IP: 70.182.81.160
[6] This call resulted in two Oklahoma state charges against Soto: One for felony Kidnapping and the other for felony Planning/Attempt/Conspire to Perform an Act of Violence. These charges are currently pending.

3225 SW 93rd St., Oklahoma City, Oklahoma. Soto's home address on the OCPD report was, 3225 SW 93rd St., Oklahoma City, Oklahoma.

15. On July 11, 2025, law enforcement installed a pole camera to capture the public view of 3225 SW 93rd St., Oklahoma City, Oklahoma. Since its installation, law enforcement has observed a male matching Soto's description from Soto's driver's license photo and identifiers, arrive to and depart from 3225 SW 93rd St., Oklahoma City, Oklahoma, in a white Toyota Tundra. On July 12, 2025, physical surveillance observed the same white Toyota Tundra parked at the 3225 SW 93rd St., Oklahoma City, Oklahoma, bearing Oklahoma license plate CBA-468. The Toyota Tundra bearing Oklahoma license plate CBA-468 is registered to Jose Soto at 3225 SW 93rd St., Oklahoma City, Oklahoma 73159, with a secondary owner of Christian Ismael Soto. Jose Soto has been identified through open-source checks as Soto's father, who resides in a home located in Moore, Oklahoma.

16. Open-source information, specifically the professional networking website, LinkedIn, lists Soto, with a profile photo of himself, as a registered nurse with Integris Health in Oklahoma since 2017 to present. This is consistent with Soto's email address on the AT&T IP return, as well as Cox IP return showing service for Integris Community Hospital in Oklahoma City, Oklahoma.

17. Based on my training and experience, and the facts presented thus far, I believe the same individual using Kik Username: randomcouplehere, is the same individual utilizing email address **howdoihackyou@gmail.com**, the **SUBJECT ACCOUNT**, who possessed and received child pornography. I am seeking authorization to search the

SUBJECT ACCOUNT which belongs to the individual who utilized the messaging application, Kik, to possess and receive child pornography.

## EXECUTION OF WARRANTS

18.    On or about, July 29, 2025, search warrants were executed on Christian Soto's person, vehicle, and residence. There were approximately twenty-seven digital items seized from Soto's residence, and thirty-three digital items seized from his vehicle. Currently, several digital items are being extracted for law enforcement to review. One of the digital items, a Samsung PSSD T7 USB Device with serial number J815109N0JNCT5S, seized from Soto's vehicle, the Toyota Tundra bearing Oklahoma license plate CBA-468, contained at least four images of CSAM. Two of the image files are described below:

File name: IMG_9719.JPG depicted a naked adult female in a bathtub performing oral sex on a naked pubescent male who was standing in the bathtub.

File name: IMG_9646.JPG depicted a photo capturing part of person's face performing oral sex on an erect penis of a prepubescent male.

## BACKGROUND CONCERNING GOOGLE

19.    Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google

14

Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

20.   In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

21.  Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

22.   Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

23.   Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

15

24.  Google also provides several messaging services including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications through browsers and mobile applications, and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user hasn't disabled that feature or deleted the messages, though other factors may also impact retention. Google does not retain Duo voice calls, though it may retain video or voicemail messages.

25.  When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

26.  Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or

other devices were used to access the Google Account.

27.  Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

28.  In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. The subscriber information, saved photos, documents, messages, and emails associated with the **SUBJECT ACCOUNT** will help establish who owns the **SUBJECT ACCOUNT** and determine to what extent the **SUBJECT ACCOUNT** has been engaged in violations of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(a)(2)(A).

29.  Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation. For example, images of child pornography may be stored within the Google Photos service associated with the **SUBJECT ACCOUNT**. Further, data from the **SUBJECT ACCOUNT's** Chrome history, "My

17

Activity" feature, and messaging services could provide evidence of the suspect's acquisition and subsequent distribution of child pornography.

30. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

31. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

32. Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of downloading and possessing child

18

pornography. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of other instrumentalities of the crimes under investigation.

33.    Therefore, Google's servers are likely to contain stored electronic communications and information concerning the subscriber of the **SUBJECT ACCOUNT** and his or her use of Google services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## ADDITIONAL CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

34.  The following indicates characteristics of child pornography collectors that I have learned through training, working multiple investigations involving child pornography, and from other law enforcement officers with a background in child pornography investigations:

a.  The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

b.   The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

19

c. The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, peer to peer, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

d.   The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

e.  The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

f.  The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. They almost

always maintain their collections in the privacy and security of their homes or other secure location.

## **CONCLUSION**

35.  Based on the above information, and my training and experience, the user of the **SUBJECT ACCOUNT** is engaging in behavior indicative of an individual who has a sexual attraction to children and there is probable cause to believe that the foregoing laws have been violated, and that the property, evidence, fruits, and instrumentalities of these offenses are located on the **SUBJECT ACCOUNT**.  Further, based on my belief that the owner and user of the **SUBJECT ACCOUNT** is a child pornography collector, this affidavit requests information from the date the was created on October 16, 2017, through July 24, 2025.

36.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Google.  Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

37.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States" with "jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

38.  Based upon the foregoing, I respectfully request that this Court issue a search warrant for the **SUBJECT ACCOUNT**, described in Attachment A, authorizing the

seizure of the items described in Attachment B to this Affidavit.

Marisol Flores
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this ___30___ day of July 2025.

AMANDA L. MAXFIELD
United States Magistrate Judge

22

## ATTACHMENT A

This warrant applies to information associated with **howdoihackyou@gmail.com** (**SUBJECT ACCOUNT**), which are stored at premises owned, maintained, controlled, or operated by Google LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. The **SUBJECT ACCOUNT** was preserved with Google on July 24, 2025.

## ATTACHMENT B

### Particular Things to be Seized and Searched

I.      Information to be disclosed by Google LLC ("Google")

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google,  Google is required to disclose to the government for the **SUBJECT ACCOUNT** listed in Attachment A the following information, from October 16, 2017, to July 24, 2025:

a.      All business records and subscriber information, in any form kept, pertaining to the **SUBJECT ACCOUNT**, including:

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

3. Telephone numbers, including SMS recovery and alternate sign-in numbers;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

5. Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers;

6. Length of service (including start date and creation IP) and types of service utilized;

24

7. Means and source of payment (including any credit card or bank account number); and

8. Change history.

b.    All device information associated with the **SUBJECT ACCOUNT**, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c.    Records of user activity for each connection made to or from the **SUBJECT ACCOUNT**, including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs;

d.    The contents of all media associated with the **SUBJECT ACCOUNT** in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; all associated logs of each record, including the creation and change history, access logs, and IP addresses; and any settings that may indicate that images or other data were automatically uploaded from the synced device to Google Photos;

e.    The contents of all emails associated with the **SUBJECT ACCOUNT**, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the

size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;

  f. All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history;

  g. The contents of all records associated with the **SUBJECT ACCOUNT** in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record; and

  h. The contents of all text, audio, and video messages associated with the **SUBJECT ACCOUNT**, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the

size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history.

Google is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of 18 U.S.C. § 2252A(a)(2)(A), Receipt of Child Pornography, and 18 U.S.C. 2252A(a)(5)(B), Possession of Child Pornography, those violations involving the unknown suspect and occurring from March 28, 2025, to the present, including, for the **SUBJECT ACCOUNT** listed on Attachment A, information pertaining to the following matters:

a.    Evidence of the possession, access with intent to view, and distribution of images depicting children engaged in sexually explicit conduct.

b.    Evidence indicating how and when the **SUBJECT ACCOUNT** was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

c.    Evidence indicating the **SUBJECT ACCOUNT** owner's state of mind as it relates to the crime under investigation; and

d.    The identity of the person(s) who created or used the **SUBJECT ACCOUNT**, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence,

fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the Affiant may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.